(No. 1333.)

## J. V. PEERS, ADMINISTRATOR OF THE ESTATE OF P. MARTINONI, Appellant, v. JOSEPH DELUCHI, et als., Respondents.

PUBLIC LANDS—EVIDENCE OF TITLE.—The affidavits and declaratory statements of entrymen applying to pre-empt public lands, filed in the proper land office, or copies thereof certified to by the register of the land office wherein the originals are filed, are admissible in courts of justice as evidence of the facts therein stated.

IDEM—FUNCTIONS OF REGISTER OF LAND OFFICE.—Whether land applied for is in the register's district, is subject to entry, has been reserved by act of congress or by the proper department, has been sold, and whether the applicant possesses the necessary qualifications of an entryman and has made the settlement on the land required by the pre-emption laws, are questions of fact for the register to decide, and when he has decided his action is final until reversed or set aside by the commissioner of the general land office.

IDEM—RAILROAD GRANT—PRIOR PRE-EMPTION.—Congress granted to the Central Pacific Railroad Company alternate sections of land, but reserved all lands in the grant to which homestead or pre-emption rights might attach before the line of the railroad should be definitely fixed. Ten months before the line of the road was definitely fixed, land within the limits of the grant was settled upon and improved, and ten days before the line was fixed the settlers filed their affidavits and declaratory statements in the proper land office. *Held*, that such lands were not included in the operation of the grant to the railroad company.

APPEAL from the District Court of the State of Nevada, Washoe county.

*R. R. Bigelow*, District Judge.

The facts are stated in the opinion.

*Clarke & Jones*, for Appellant.

1. The declaratory statements and affidavits of Groten and Meyers were not competent evidence against plaintiff to show that a pre-emption had attached to the land.

II. A "pre-emption right" does not attach by the mere filing of a pre-emption claim. There must be a pre-emption

and a bona fide settlement before " a pre-emption right " attaches.

III.   The declaratory statements and accompanying affidavits did not prove and were not intended to prove, even to the land department of the United States, much less to the court in this case, that either Groten or Meyers were qualified pre-emptioners or had made, or ever intended to mal e, a bona fide settlement on the land.   (*Page* v. *Hobbs*, 27 Cal. 486; *Brown* v. *Corson*, 16 Or. 388; *Young* v. *Goss*, 42 Kan. 502.)

*R. H. Lindsay* and *Baker & Wines*, for Respondents.

I.   The land in controversy was excluded from the operation of the grant to the railroad company.   (*Kan. Pacific R. R. Co.* v. *Dunmeyer*, 113 U. S. 629; *Hastings & Dakota R. R. Co.* v. *Whitney*, 132 U. S. 357.)

II.   The cases cited by appellant are not in point, except the case of *Brown* v. *Carson*, which is in direct conflict with the decisions of the supreme court of the United States.   In *Young* v. *Goss*, cited by appellant, the homestead entry had been abandoned before the grant took effect.

By the Court, MURPHY, J.:

It appears from the records of this court that the plaintiff, P. Martinoni, has died since the rendition of the judgment and denial of the motion for a new trial in the district court, and by order of this court J. V. Peers, public administrator of Washoe county, has been substituted as plaintiff and appellant in place of deceased.   This action was brought by P. Martinoni, now deceased, to recover possession of a tract of land situate in Washoe county.   James Murphy and ——— Murphy were sued, but they having disclaimed any interest in or right of possession to the land, it was stipulated that judgment might be rendered against them for the land, but not for damages. The cause was tried before the court without a jury, and judgment was given in favor of Joseph Deluchi and Angelo Deluchi. The plaintiff moved for a new trial, and, the motion being denied, appeals from the judgment and order.

The land in controversy is situate within the limits of the grant to the Central Pacific Railroad Company of California, by an act of congress passed July 1, 1862, entitled " An act to aid in the construction of a railroad and telegraph line from the

Missouri river to the Pacific ocean, to secure to the government the use of the same for postal, military, and other purposes." (12 U. S. Stat. at Large, p. 489.) Section 3 of said act reads as follows: "And be it further enacted: That there be, and is hereby, granted to the said company, for the purpose of aiding in the construction of said railroad and telegraph line, and to secure the safe and speedy transportation of the mails, troops, munitions of war, and public stores thereon, every alternate section of public land, designated by odd numbers, to the amount of five alternate sections per mile on each side of said railroad, on the line thereof, and within the limits of ten miles on each side of said road, not sold, reserved, or otherwise disposed of by the United States, and to which a pre-emption or homestead claim may not have attached, at the time the line of said road is definitely fixed. * * * " This act was amended by section 4 of the act of July 2, 1864 (13 U. S. Stat. at Large, 358), by inserting the word " ten " instead of " five," and " twenty " instead of " ten," and then reads: " And any lands granted by this act or the act to which this is an amendment, shall not defeat or impair any pre-emption, homestead, swamp land, or other lawful claim, nor include any government reservation or mineral lands, or the improvements of any bona fide settler. * * * "

It is conceded that the land in controversy is a part of an odd section; that the line of the road was definitely fixed on the 14th day of October, 1867, and that the plaintiff had obtained a deed from the railroad company to the land prior to the commencement of this action; and that the title of the railroad company was perfect when it made the deed to Martinoni under the grant found in the above-mentioned act, unless it comes within some of the exceptions mentioned in said grant. The attorney for appellant contends that the evidence introduced on the part of the defendants was "incompetent, irrelevant, immaterial, and did not tend to prove the existence of a pre-emption claim to the land.". The defendants in their answer denied the plaintiff's ownership and right of possession to the land. They also introduced in evidence the following exhibits: " Martin Groten, being duly sworn, deposes and says: I reside in Storey county, Nevada. I settled upon and commenced improving the southeast quarter of the southwest quarter of section sixteen (16), and south half of southwest quarter, and northwest

quarter of southwest quarter of section fifteen (15), township nineteen (19) north, of range 21 east, about the 15th of February, 1864. Said land was then unsurveyed. I have not seen any notice of publication of the reception of the township plat at the land office at Carson City, Nevada, and did not know that the plat was at the land office until a few days since, or I should have filed on the land long ago, or within the time prescribed. I now ask to be allowed to file my declaratory statement upon the above described land. Martin Groten. Subscribed and sworn to before me, this 4th day of October, 1867. Warren T. Lockhardt, Register."

Declaratory statement:

" I, Martin Groten, of Storey county, Nevada, being a married man, and a native-born citizen of the United States, did, on or about the 15th day of February, A. D. 1864, settle and improve the S. E. ¼ of the S. W. ¼ of section 16, and S. ½ of S. W. ¼ and N. W. ¼ of S. W. ¼ of section 15, in Tp. 19 N., of R. 21 E., in the district of lands subject to sale, at the land office at Carson City, Nevada, and containing one hundred and sixty acres, which land has not yet been offered at public sale, and thus rendered subject to private entry; and I do hereby declare my intention to claim the said tract of land as a pre-emption right, under the provisions of the act of congress, approved the 4th of September, A. D. 1841    Given under my hand and seal this 4th day of October, A. D. 1867.    Martin Groten.

[Seal.]   In the presence of Warren T. Lockhardt, Register."

There were two similiar papers made out and sworn to by John P. Myers, on the same day, and before the same officers, the only difference being, Myers was a resident of Washoe county, a single man over the age of twenty-one years, and had settled and commenced improving the N. E. ¼ of the S. W. ¼, and S. E. ¼ of the N. W. ¼, and the W. ½ of the N. E. ¼ of section 15, in township 19 N., of range 21 E., on the 1st day of January, A. D. 1864, and had resided on the land and made it his home from the date of his settlement until the time of filing his declaratory statement.   All the papers are duly certified to by O. H. Gallup, as register of the United States land office at Carson City, Nev., as being full, true, and correct copies of the originals thereof filed in his office, and that he was the custodian of the same.

Plaintiff objected to the introduction of said declaratory

statements, and to said affidavits, and to each of them, on the
grounds following, to-wit :  " That they were incompetent, and
not the best evidence; that the matters set out in said exhibits,
and each of them, could not be proved by such exhibits; that
the evidence offered was *ex-parte* that the facts recited therein
could not be so established in this case; that it was not com-
petent to prove by said exhibits that the persons named therein
were pre-emptors, or were entitled to the rights of such, or that
they had settled upon the land, or otherwise complied with the
law."    The affidavits and declaratory statements are in the form
as prescribed by the commissioner of the general land office
for the guidance of the local land officers.    Whenever a party
makes application to pre-empt land, the register of the land
office must satisfy himself that the land is within his district;
that it is subject to entry: that it has not been reserved by any
act of congress, or of the proper department, and that it has
not been sold.    He must also be satisfied that the party making
the application to pre-empt possesses the necessary qualifica-
tions to entitle him to do so, and has made the settlement on
the land as required by the pre-emption laws    These are all
questions of fact for the register to decide, and in deciding
them, he requires the exercise of judgment and discretion, and
when he has decided, his action is final until reversed or set
aside by the commissioner of the general land office.

When the proof establishes the facts to the satisfaction of the
register, that the party is entitled to enter the land, the declara-
tory statement, and all papers connected therewith, are filed
and become a part of the records of the land department.    They
are kept in the office so as to show what lands are taken under
the pre-emption, homestead, or other laws of the general gov-
ernment.    The records are in the custody and under the con-
trol of the register, and are kept under the official sanction of
the government; their contents have always been considered,
and always have been received in courts of justice as evidence of
the facts stated.

In the case of *Courchaine* v. *Mining Co.*, 4 Nev. 375, Lewis,
J., said: " The paramount proprietor of the soil, having an
unrestricted right of disposition, has established certain regu-
lations, by which persons producing the requisite proof are en-
titled to purchase.  *   *   *   The decision of the proper
officers is therefore evidence, not only of the fact that he in

whose favor it is rendered is entitled to the patent, but also that he has settled upon and improved the premises claimed by him, and is certainly a direct acknowledgment that such settlement and possession is lawful and in accordance with the will of the general government. The register and receiver of the local land office are the officers appointed by the government to take the proof; decide upon the merits of the application. The law requires the proof in all cases to be made to their satisfaction. Where the proof is so made, and their decision rendered, how can it be said that such decision is not evidence of right of possession in him in whose favor it is given? It is a decision made by officers appointed by the government to determine such rights. Their decision is the decision of the government itself, and should therefore be accepted as evidence of superior rights. The conclusion arrived at by the land officers, although not strictly a judicial decision, bears nevertheless a strong analogy to it, and it seems to us should be received as evidence of the right to the possession, and indeed, of all the facts which it is necessary for the pre-emptor to prove before the land officers." And in the case of *McFarland* v. *Culbertson*, 2 Nev. 285, the same judge said: "In any event, if the defendants wished to derive any advantages from the filing of a declaratory statement, they should have introduced the statement itself, or a certified copy of it, so that the court below might judge of its effect."

In the case of *Baldwin* v. *Stark*, 107 U. S. 465, Mr. Justice Miller, speaking for the court, said: "It has been so repeatedly decided in this court, in cases of this character, that the land department is a tribunal appointed by congress to decide questions like this, and when finally decided by the officers of that department the decision is conclusive everywhere else as regards all questions of fact, that it is useless to consider the point further." And the decision of the supreme court of Nebraska was reversed, because they had re-examined the evidence upon which the officers of the land department had acted, and held the same to be insufficient.

Section 3618, Gen. Stat. Nev., reads: "A copy of any record, document, or paper in the custody of a public officer of this state, or of the United States, within this state, certified under the official seal, or verified by the oath of such officer to be a true, full, and correct copy of the original in his custody, may

be read in evidence in any action or proceeding in the courts of this state, in like manner and with the like effect as the original would be if produced."

The papers were admissible in evidence as tending to show that, at the time of the location of the route of the Central Pacific railroad, there was a pre-emption claim to the land. It appears from the record submitted to us, that on the 15th day of June, 1886, the railroad company made application to the land department of the government for a patent to the lands in question, which application was denied. If, now, we apply these doctrines which have been established by repeated decisions of the supreme court of the United States, this case before us will be readily disposed of. The plaintiff relies upon the title of the railroad company to the lands under the grant mentioned in the act of congress. Defendants deny the title of the railroad company to the lands under the grant, and have introduced testimony to show that at the date of the definite location of the route, and the filing of the map with the secretary of the interior, there was a pre-emption claim attached to said lands, and by reason thereof that the lands in dispute were exempt from the operation of said grant. In this we think they are correct.

From the testimony it appears that, ten months prior to the line of said road being definitely fixed, Groten, for himself and Myers, on his own behalf, settled upon and improved the lands in controversy, and ten days before the location of said line of road opposite said lands, the said Groten and Myers presented themselves at the United States land office at Carson City, and made the proofs to the satisfaction of the register and receiver, and made a pre-emption claim to said lands, and, from the time of receiving and filing the declaratory statements in the United States land office, the said lands no longer remained a part of the public lands of the United States, and would never become a part of the public domain, until such time as the officers of the land department should take action, and cancel the applications of Groten and Myers; and to allow the conclusions of the officers of the land department, on questions of fact, to be subject to review by the courts in cases of this kind, would open the door to endless litigation.

As said by Justice Lamar in the case of *Railroad Co.* v. *Whitney*, 10 Sup. Ct. Rep. 115: "When these three requisites are

complied with, and the certificate of entry is executed and delivered to him, the entry is made—the land is entered. If either one of these integral parts of an entry is defective—that is, if the affidavit be insufficient in its showing, or if the application itself is informal; or if the payment is not made in actual cash—the register and receiver are justified in rejecting the application. But if, notwithstanding these defects, the application is allowed by the land officers, and a certificate of entry is delivered to the applicant, and the entry is made of record, such entry may be afterwards canceled on account of these defects by the commissioner, or on appeal by the secretary of the interior; or, as is often the practice, the entry may be suspended, a hearing ordered, and the party notified to show by supplemental proof a full compliance with the requirements of the department, and, on failure to do so, the entry may then be canceled. But these defects, whether they be of form or substance, by no means render the entry absolutely a nullity. So long as it remains a subsisting entry of record, whose legality has been passed upon by the land authorities, and their action remains unreversed, it is such an appropriation of the tract as segregates it from the public domain, and therefore precludes it from subsequent grants. In the case before us, at the time of the location of the company's road, an examination of the tract-books and the plat filed in the office of the register and receiver, or in the land office, would have disclosed an entry of record, accepted by the proper officers, in the proper office. Such an entry attached to the land a right which the road cannot dispute for any supposed failure of the entryman to comply with all the provisions of the law under which he made his claim." *Railway Co.* v. *Dunmeyer*, 113 U. S. 629; *Newhall* v. *Sanger*, 92 U. S. 761; *Railroad Co.* v. *Whitney*, 10 Sup. Ct. Rep. 112; (*Whitney* v. *Taylor*, 45 Fed. Rep. 616, U. S. Cir. Ct. Cal., opinion by Hawley, J.)

The judgment and order appealed from are affirmed.

BIGELOW, J., did not participate in the foregoing decision, having presided at the trial of the cause below.